GINGER DENNENY *vs.* ZONING BOARD OF APPEALS OF
SEEKONK & others.[1]

No. 01-P-793.

Bristol. January 9, 2003. - September 8, 2003.

Present: PERRETTA, COWIN, & GREEN, JJ.

*Zoning,* Person aggrieved. *Practice, Civil,* Standing.

An abutter to an abutter within 300 feet of the property on which a consortium
   of providers of radio telephone communication sought to construct a com-
   munications tower did not satisfy her burden of demonstrating that she had
   standing under G. L. c. 40A, § 17, as a "person aggrieved" to seek review
   of the decision of the defendant town zoning board granting the
   consortium's petition for a special permit to construct the tower, where,
   upon the consortium's presentation of evidence challenging her presump-
   tive standing under § 17, the abutter offered no evidence to substantiate
   her allegations that the communications tower would bring about a
   deterioration in the market value of her property, that a lack of structural
   integrity in the tower created a safety hazard to her property, or that the
   tower's radio transmissions would interfere with the operation of the abut-
   ter's home appliances, and where the abutter lacked the requisite private
   interest in the enforcement of the zoning laws with regard to the property
   on which the tower would be built. [211-216]

CIVIL ACTION commenced in the Superior Court Department on
March 31, 1997.

The case was heard by *Mitchell J. Sikora,* J.

*Ginger Denneny,* pro se.

*David B. Wilson (Michael S. Giaimo* with him) for Cellco
Partnership.

*Patrick J. Costello,* for Zoning Board of Appeals of Seekonk,
was present but did not argue.

---

[1] Bell Atlantic Cellular Holdings, L.P.; Nynex PCS, Inc.; PCSCO Partner-
ship; GTE Wireless of the South, Inc.; GTE Wireless, Inc.; GTE Wireless of
Ohio, Inc.; GTE Consumer Services, Inc.; PCS Nucleus, L.P.; JV Partnerco,
LLC; and Airtouch Paging, as general partners of Cellco Partnership, doing
business as Verizon Wireless; and Water District of Seekonk.

Cowin, J. The defendant Cellco Partnership (Cellco), a consortium of providers of radio telephone communication services (most frequently in the form of cellular telephone service), applied for and received from the defendant zoning board of appeals of Seekonk (board) a special permit to construct on property owned by the defendant water district of Seekonk (water district) a 135-foot steel communications tower with attached antenna equipment and a one-story equipment building. The board also granted Cellco variances that reduced certain rear and side yard setback requirements. The plaintiff appealed under G. L. c. 40A, § 17. A judge of the Superior Court concluded that the plaintiff was a "person aggrieved" with standing to seek review of the board's decision, but that, on the merits, the board's decision did not exceed its authority. The parties cross-appealed, the plaintiff challenging the judge's determination on the merits, and Cellco asserting that the judge erred in deciding that the plaintiff had standing to prosecute the appeal under G. L. c. 40A, § 17. The judge's decision on the merits appears to have been correct.[2] However, we conclude that, on this record, the plaintiff did not satisfy her burden of demonstrating that she had standing to seek review of the decision of the board. Accordingly, the appeal should have been dismissed.[3]

1. *Material facts and prior proceedings.* Cellco's application for zoning relief called for construction of a tower on a parcel of land eight-tenths of an acre in size on which the water district already has a water tank with dimensions of 125 feet in height and eighty feet in width.[4] Pursuant to its agreement with the water district, Cellco committed to attach to the tower equipment that could be used for communications purposes by vari-

---

[2]In so saying, we refer only to the judge's conclusion that the board's decision was supportable in light of his findings after trial. We intimate no views regarding the adequacy of the board's findings or the ability of a reviewing court to conduct the inquiry called for by § 17 in the absence of adequate administrative fact finding.

[3]Because we decide that the plaintiff lacked standing to pursue the case in the Superior Court, it is unnecessary to review the judge's decision on the merits.

[4]Cellco asserts that the town of Seekonk falls within a gap in signal coverage in its personal wireless communication network, and that the tower would fill that gap.

ous municipal agencies. The water district lot is located in a residential (R-2) district under the Seekonk zoning by-law, §§ 6.6 and 6.8 of which require, respectively, minimum rear yard setbacks of fifty feet and minimum side yard setbacks of twenty feet plus five additional feet for each story over one. Accordingly, Cellco sought (1) authorization to construct the tower under § 6.2.14 of the zoning by-law, which provides that a public or private utility may operate in a residential district by means of a special permit, and (2) variances under § 20.1 of the zoning by-law reducing the rear yard and side yard setback requirements to ten feet each.

Following a public hearing in which the plaintiff participated, the board voted to allow the special permit and the setback variances subject to the conditions that the tower not exceed 135 feet in height; the tower and accompanying equipment building be surrounded by a fence with climbing deterrents; the lower twenty feet of the tower ladder be removed; and a thick buffer of natural shrubs encircle the Cellco site at a height of eight feet.

The plaintiff owns and resides at property within the R-2 zoning district. She is an abutter of an abutter, with a portion of her property located within 300 feet of the water district lot on which Cellco was authorized to construct the tower. Pursuant to G. L. c. 40A, § 17, she filed a timely appeal to the Superior Court of the board's decision. She asserted eight challenges to the decision as follows: (1) Cellco did not qualify as a private or public utility with standing under § 6.2.14 of the zoning by-law to apply for the special permit; (2) the board's action will bring about the devaluation of neighborhood properties, including that of the plaintiff; (3) lack of structural integrity of the tower creates a safety hazard to nearby residents; (4) the tower's radio transmissions will interfere with the operation of home appliances in the town; (5) the site as developed will pose a danger to children; (6) the tower will pose a health hazard to the community; (7) the tower reduces the aesthetic appeal of the area; and (8) the granting of the relief sought by Cellco unlawfully expands the existing nonconforming use by the water district.

Following a nonjury trial in the Superior Court, the judge

determined that the plaintiff's claims that the tower was aesthetically undesirable, that it endangered the health of the community, and that it was a danger to neighborhood children constituted concerns of a general nature, and were not the kind of plausible claims of definite violations of private rights, private property interests, or private legal interests that are necessary to confer standing on a plaintiff to appeal under § 17. See *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 492-493 (1989). Otherwise, as indicated above, the judge ruled that the plaintiff had demonstrated that she was a "person aggrieved" entitled to challenge the board's decision,[5] but that she had not established that the board had exceeded its authority in granting the special permit and variances. Judgment in favor of the defendants was entered, and these appeals followed.

2. *Standing.* The judge accurately identified the criteria for determining whether a given plaintiff has standing under § 17 to seek judicial review of a decision by a zoning board of appeals. Section 17 vests the right to judicial review in "[a]ny person aggrieved" by certain zoning decisions. The requirement that the challenger must be a "person aggrieved" is jurisdictional. See *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 131 (1992). How to define a "person aggrieved" has been the subject of considerable judicial exposition. The criteria are set forth in *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). While the term "person aggrieved" should not be construed narrowly, see *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957), a plaintiff must be able to demonstrate, not merely speculate, that there has been some infringement of his legal rights. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430 (1949); *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329, 335 (1993) (Abrams, J., dissenting). The claimed injury or loss must be personal to the plaintiff, not merely reflective of the concerns of the community. See *Har-*

---

[5] In doing so, he found that her concerns with depreciation in value of her property, interference with her home appliances, possible collapse of the tower, and alteration of the nonconforming status of the water district lot were sufficient to confer standing.

*vard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge, supra*; *Barvenik* v. *Aldermen of Newton, supra* at 132; *Valcourt* v. *Zoning Bd. of Appeals of Swansea*, 48 Mass. App. Ct. 124, 127 (1999).

Persons entitled under G. L. c. 40A, § 11, to notice of zoning board of appeals hearings are given the benefit of a rebuttable presumption that they are "persons aggrieved" for purposes of G. L. c. 40A, § 17. See *Watros* v. *Greater Lynn Mental Health & Retardation Assn., Inc.*, 421 Mass. 106, 111 (1995). Among others, an abutter to an abutter within 300 feet of the petitioner's property line has presumptive standing to appeal. See G. L. c. 40A, § 11. That standing may be challenged, and, if the challenge is "supported by evidence,"[6] the presumption disappears and the question of standing "will be determined on all the evidence with no benefit to the [abutter] from the presumption." *Valcourt* v. *Zoning Bd. of Appeals of Swansea, supra* at 127-128, quoting from *Marotta* v. *Board of Appeals of Revere, supra*. Once standing is adequately challenged, "the plaintiff must put forth credible evidence to substantiate his allegations," and the question of standing then becomes a question of fact for the trial judge. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra*.[7] The plaintiff's evidence must be more than unsubstantiated claims or speculative personal opinions. See *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 688 (1994).

Applying these principles to the present case, the plaintiff had presumptive standing by virtue of her status as an abutter to an abutter and the location of her property within 300 feet of the water district lot. We agree with the judge that the plaintiff's claims of danger to neighborhood children and danger to the health of the community reflect general concerns and are not

---

[6]The quantum of evidence necessary to bring about elimination of the presumption has not been defined with precision. See *Barvenik* v. *Aldermen of Newton, supra* at 131 n.7. Even if the standard is evidence sufficient to permit findings in favor of the defendant on the factual disputes relevant to standing, it is clear that Cellco presented such a quantum of evidence here.

[7]"A review of standing based on 'all the evidence' does not require that the factfinder ultimately find a plaintiff's allegations meritorious. To do so would be to deny standing, after the fact, to any unsuccessful plaintiff." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra*.

sufficiently specific to her to confer standing. See *Barvenik* v. *Aldermen of Newton, supra* at 132-133. Her anticipation that there will be aesthetic deterioration may or may not be deemed specific and personal to her, but, in either event, such a subjective concern is beyond the scope of interests protected by the Zoning Act.[8] With respect to three other allegations, i.e., diminished market value of the plaintiff's property, interference with her home appliances, and the threat of the tower collapsing, he determined that the plaintiff had established her standing to appeal. He ruled also that the plaintiff had standing because of her interest in preventing an improper alteration of the nonconforming status of the water district lot.[9] We conclude that the judge erred in determining that the plaintiff had presented sufficient evidence substantiating these claims to acquire standing.

a. *Devaluation of property.* Cellco offered the opinion of a qualified expert witness that construction of the communications tower on the water district lot would not reduce the market value of the plaintiff's property given that the lot already contained a water tank of a height almost equal to that of the proposed tower. His opinion was supported by a market study of comparable Bristol County residential properties. We can pass Cellco's contention that the judge improperly discounted the expert's opinion because of an erroneous view regarding the comparability of the properties chosen in the study. That opinion, even given less weight than that to which it may have been entitled, remained the only competent evidence on the subject of value. Cellco's evidence thrust on the plaintiff the burden of putting forth credible evidence substantiating her allegation that the communications tower would bring about a deterioration in the market value of her property. Her testimony

---

[8]Contrast *Martin* v. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 434 Mass. 141, 146-147 (2001), where the zoning by-law itself provided that there should be consideration of the visual consequences of a proposed structure. "Generally, concerns about the visual impact of a structure do not suffice to confer standing . . . ." *Id.* at 146.

[9]The plaintiff's other contention, rejected by the judge, that Cellco itself lacked standing to apply for zoning relief because it was not a public or private utility for purposes of § 6.2.14 of the zoning by-law, need not be addressed given our determination that the plaintiff was not a person aggrieved with the right of appeal.

that "per se, the proximity of a tower reduces the value of property" was speculative and conclusory, and insufficient to warrant a finding of aggrieved person status on this issue. See *Monks* v. *Zoning Bd. of Appeals of Plymouth, supra.*

b. *Structural integrity of the tower.* We acknowledge Cellco's contention that communications towers are regulated by the State building code, see 780 Code Mass. Regs. §§ 3108 et seq. (1997), and that therefore the board acted beyond its authority in light of the provisions of G. L. c. 40A, § 3, that there shall be no regulation or restriction of the use of materials or methods of construction of structures so regulated. However, we need not resolve whether the board's action is barred by G. L. c. 40A, § 3, because on this record Cellco prevails in any event on standing grounds.

In this regard, Cellco introduced qualified expert evidence that structural failure of the proposed tower was highly unlikely in that it would be built to withstand winds about one and one-half times the highest winds recorded in Massachusetts during the past forty-two years. There was additional testimony that, even were the tower to collapse, it would fold onto itself rather than falling over, thus reducing likely damage from such an event. The plaintiff presented no evidence to the contrary, admitting that she was aware of no collapse of a communications tower anywhere in southeastern Massachusetts. Her speculation that there was possible harm associated with towers of this nature was an insufficient basis on which to confer standing.

c. *Radio frequency interference.* Cellco's expert witness testified that the company was not permitted to transmit or receive signals outside of a narrow frequency range; that its facilities had never been a source of radio frequency interference; and that transmissions from the tower would have no effect on the plaintiff's electric appliances or other equipment. The plaintiff offered no evidence in response, even conceding that radio frequency interference was "not that big a thing." In the absence of any evidence substantiating her claim, she did not establish standing on this basis.

d. *Alteration of nonconforming status of lot.* Finally, the plaintiff objected to the board's decision on the ground that the water district lot was already the subject of a nonconforming

use, i.e., the water tank, and that the nonconforming use could not lawfully be expanded by installation of a communications tower. An abstract interest in the enforcement of zoning laws is not sufficient. "[A] general civic interest in the enforcement of zoning laws . . . is not enough to confer standing." *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. at 495-496. As set forth above, the plaintiff has not demonstrated that the board's decision will cause tangible harm that is personal to her, *Valcourt* v. *Zoning Bd. of Appeals of Swansea*, 48 Mass. App. Ct. at 127, or that her concerns are different from those of the general community. *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. at 132.

"Individual or corporate property owners acquire standing by asserting a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge, supra* at 492-493. A generalized, nonspecific interest in enforcement of the zoning law is not the same as an assertion that a *private* interest has been affected. A plaintiff does not satisfy this requirement by asserting "a claim that involves a matter of general public interest." *Nickerson* v. *Zoning Bd. of Appeals of Raynham*, 53 Mass. App. Ct. 680, 683 (2002). Oversight of a municipality's zoning policies is the responsibility of duly authorized municipal officials; it is not a task for private attorneys general who do not themselves have a cognizable legal interest affected by the zoning action. That cognizable legal interest does not embrace a general civic interest in enforcement of the zoning by-law.

We recognize that various cases have alluded to a theoretical interest of a property owner in preserving the "integrity of the [zoning] district" in which his property is located. However, none of those cases recognized "integrity of the [zoning] district" as a separate and independent basis for standing absent a cognizable injury. Indeed, the cases that have mentioned "integrity of the district" have done so in the process of explaining why given owners of property were *without* standing in particular circumstances. See, for example, *Waltham Motor Inn, Inc.* v. *LaCava*, 3 Mass. App. Ct. 210, 217 (1975) (plaintiffs operating under variance or special permit had no legitimate

interest in preserving integrity of district from introduction of additional similar uses); *Sherrill House, Inc.* v. *Board of Appeal of Boston,* 19 Mass. App. Ct. 274, 276 (1985) (same; plaintiff operating under nonconforming use); *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge, supra* at 495 (plaintiffs neither owned nor occupied property within affected zoning district); *Riley* v. *Janco Cent., Inc.,* 38 Mass. App. Ct. 984, 985 (1995) (interest in preserving zoning integrity not sufficient to establish standing of one not owning or occupying property in affected district).

Because the plaintiff did not show that her own legal rights were likely to be affected, the judge's determination that she nevertheless had standing to appeal had the effect of giving the plaintiff continued benefit of the standing presumption. As the judge himself recognized, that presumption recedes once the adverse party presents evidence challenging the presumption. *Watros* v. *Greater Lynn Mental Health & Retardation Assn., Inc.,* 421 Mass. at 111. Absent the presumption, the plaintiff has not made out a case that she is a "person aggrieved" for purposes of G. L. c. 40A, § 17.[10,11]

3. *Disposition.* The judgment affirming the decision of the board is vacated. A new judgment shall enter dismissing the complaint seeking judicial review under G. L. c. 40A, § 17.

*So ordered.*

---

[10]*Tsagronis* v. *Board of Appeals of Wareham,* 415 Mass. at 330 n.4, cited by the judge for the proposition that a plausible claim of diminution of the fair market value of abutting property is sufficient to confer standing, does not relax the requirements. A "plausible" claim is one supported by evidence. Furthermore, in *Tsagronis,* there was no effective challenge to the plaintiff's presumed standing; thus, the presumption survived and was sufficient by itself to permit the appeal. Indeed, the *Tsagronis* court states that a finding of aggrieved party status "probably is compelled as a matter of law." *Ibid.*

[11]That the plaintiff's real estate taxes were subsequently reduced by the local assessors alters nothing. That reduction had not taken place at the time of the board's hearing, and obviously could not be a factor in its consideration. Nor, as indicated above, did the plaintiff present other competent evidence of a reduction in fair market value attributable to construction of the communications tower.